UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH CLARK,

                              Plaintiff,

        v.                                          1:09-cv-1037

THOMAN DiNAPOLI AS STATE COMPTROLLER
OF THE STATE OF NEW YORK AND NEW YORK
STATE POLICE AND FIRE RETIREMENT SYSTEM,
et al.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Joseph Clark commenced the instant action pursuant to 42 U.S.C. § 1983

asserting claims for violations of his rights as guaranteed by the due process and equal

protection clauses of the Fourteenth Amendment and the First Amendment.  He also claims

a violation of N.Y. Gen. Mun. Law § 207-c.  Presently before the Court is Defendants

Thomas DiNapoli, New York State and Local Police and Fire Retirement System, Robert

Coughlin and Dana Riell's (collectively the "State Defendants") motion to dismiss pursuant to

Fed. R. Civ. P. 12(c).

**I.      FACTS**

        Plaintiff was employed as a police officer by the Town of Clarkstown (the "Town") in

Rockland County, New York.  In 1989, Plaintiff began receiving benefits pursuant to N.Y.

Gen. Mun. Law § 207-c.[1]  In 1995, the Town, through then Chief of Police William Collins,

applied for retirement disability benefits pursuant to N.Y. Retire. & Soc. Sec. Law § 363-c on

Plaintiff's behalf.[2]  On or about February 4, 1999, Defendant State Comptroller DiNapoli

issued a determination granting the Town's application for the retirement of Plaintiff for

disability incurred in the performance of duty.[3]  As a result of the Comptroller's determination,

the Town removed Plaintiff from its payroll.

Plaintiff requested a hearing and redetermination.  In September 1999, the

Retirement System started a hearing purportedly to address certain procedural issues.

Nevertheless, the hearing officer decided the case on the merits.  The Retirement System

issued a preliminary determination, but included a cover letter informing Plaintiff that he had

to file a proceeding pursuant to N.Y.C.P.L.R. Art. 78 within four months.  Plaintiff filed an

Article 78 proceeding challenging the preliminary determination.  The Retirement System

then advised Plaintiff that it would schedule further proceedings on the merits.  As a result, in

---

[1] Section 207-c deals with the payment of salary, wages, and medical expenses of a policeman injured in the performance of duty.  Section 207-c entitles a policeman to be paid his salary while disabled if he was injured during the course of duty.  As is significant to this case, payments cease if, among other reasons, "such policeman is granted . . . a retirement for disability incurred in the performance of duty allowance pursuant to section three hundred sixty-three-c of the retirement and social security law. . . ."  Section 207-c benefits are greater than section 363-c benefits.

[2] Pursuant to § 363-c, an application for retirement for disability incurred in performance of duty may be made by "[t]he head of the department in which such member is employed." § 363-c(c)(2).  As noted, pursuant to section 207-c, the granting of § 363-c retirement disability benefits would cause payments under § 207-c to discontinue.

[3] Plaintiff contends that this determination was made without notice and an opportunity to be heard and without informing Plaintiff of the medical condition it found to be permanently disabling. Plaintiff further asserts that he was granted these benefits in retaliation for his involvement with the Rockland County PBA, which had been active in asserting the rights of police officers receiving salaries pursuant to § 207-c. Am. Compl. at ¶¶ 37-38.

2000, the Article 78 proceeding was dismissed on the basis of Plaintiff's failure to exhaust his administrative remedies.

In 2001, Plaintiff applied for accidental disability retirement benefits.  Plaintiff filed the application "without prejudice to his pending request for a hearing and redetermination of the granting of the employer's application for his performance of duty disability retirement. . . ."  Am. Compl. at ¶ 47.

In 2002, Plaintiff traveled to Albany, New York to inspect his file at the Retirement System.  The file was in a state of disarray.  While Plaintiff was reviewing his file, he was surrounded by security guards.  In August 2002, Defendant Coughlin, an attorney for the New York State and Local Retirement System, wrote Plaintiff stating "in the event you wish to continue with the administrative hearing on the Performance of Duty Disability Retirement application, please advise us in writing within thirty days of the date of this letter."  By letter dated October 8, 2002, Coughlin again wrote Plaintiff stating that, because he had not received a response to the October 8 letter, "the New York State and Local Retirement System considers the matter to be closed."

"In late 2005, the Retirement System informed the Plaintiff that it had closed the Plaintiff's hearing file 'by mistake' and opened a new file with a new case number."  Am. Compl. at ¶ 55.  Thereafter, Plaintiff sent numerous letters to the Retirement System "asking legitimate questions that needed to be answered but the Retirement System repeatedly failed to respond. . . ."  Id. at ¶ 55.  In September 2006, Plaintiff sent a letter to George King, General Counsel to the Retirement System, "explaining the history of his case and enclosing copies of earlier correspondence."  Id. at 71.  In November 2006, King responded to Plaintiff that

> [a]t the hearing, the issues to be addressed will be whether you were permanently incapacitated for the performance of duties and whether the Chief of Police was the 'head of a department' for the purpose of filing the application for the Performance of Duty Retirement.  As the party requesting the hearing, you will bear the burden of proof. . . .  These are the only issues to be addressed at the hearing, and the Retirement System will not stipulate to any other matters.

In a subsequent letter sent in December 2006, King advised Plaintiff that he could raise whatever issues he chose before the hearing officer and that "[t]he Retirement System attorney may object to any [issues] that are felt to be improper and/or irrelevant to the proceeding, and the hearing officer will decide the matter."

Plaintiff then received a notice scheduling a hearing for January 29, 2007.  Plaintiff was subsequently advised that the hearing had been adjourned to February 22, 2007.  Plaintiff sent letters concerning the nature of the hearing, to which he did not receive a response.  By letter dated February 16, 2007, the Retirement System notified Plaintiff that the hearing was adjourned.  Thereafter, Plaintiff received a transcript indicating that a proceeding was held on February 22, 2007, and that Defendant Dana Riell, an attorney for the Retirement System, "told the hearing officer that the hearing was adjourned at the request of Plaintiff."  Id. at 81.  Plaintiff contends that "the adjournment was [not at his request, but] due to the failure of the Retirement System to answer Plaintiff's phone calls and letters. . . ."  Id.

Thereafter, Riell took the position that Plaintiff would not be allowed to raise any issues other than those set forth in the 2000 interim decision.[4]  By letter dated June 4, 2007,

---

[4] These issue were: (1) whether Plaintiff was permanently incapacitated for the performance of duties; and (2) whether the chief of police was the head of the department for purposes of filing for § 363-c benefits.

Relying on that portion of King's letter stating that Plaintiff could raise whatever issues he

(continued...)

Riell wrote to Plaintiff "stating that the Retirement System would not give Plaintiff a hearing on the merits but, instead, would only hold a hearing on whether his application 'should be dismissed for [his] failure to prosecute [his] claim.'" Id. at ¶ 94.  In his letter, Riell wrote that:

> In a February 20, 2007 letter, the Retirement System requested that you provide, no later than April 6, 2007, information that would allow the Retirement System to schedule a hearing at a time and date convenient to you to present medical evidence.  A copy of that letter is enclosed.  To date, the information has not been received.

Id. at ¶ 95.[5]

Ultimately, a hearing was scheduled for November 30, 2007 to determine whether Plaintiff's request for a hearing should be dismissed for failure to prosecute.  At the hearing Plaintiff "was allotted only [a] few minutes" to explain why his case should not be dismissed. Id. at ¶ 104.  The hearing officer declined to dismiss Plaintiff's request for a hearing.  Id. at ¶ 105.

Thereafter, Plaintiff commenced the instant litigation.  On December 15, 1999, after the filing of this lawsuit, the Retirement System held a hearing.  Plaintiff raised various issues, including a motion to recuse the hearing officer.  The hearing officer rejected the motion to recuse, determined that Plaintiff had the burden of proof at the hearing, rejected the equal protection and due process claims based on the delay in providing a hearing, and concluded that Plaintiff failed to satisfy his burden of proof sufficient to overturn the

---

[4](...continued)
wished, Plaintiff argues that Riell adopted a position contrary to that of King because Riell opposed Plaintiff's attempts to raise issues other than those set forth in the 2000 interim decisions.  Plaintiff uses this argument in support of his contention that Riell interfered with his Due Process and Equal Protection rights.

[5] Plaintiff claims that, through this letter, Riell made a determination on behalf of the Retirement System thereby usurping the role of the hearing officer and denying him his rights to due process under the law.

Comptroller's determination.  Plaintiff did not file an Article 78 petition to challenge that

determination.  Plaintiff contends that the hearing was fraught with various procedural

problems, including ex parte communications and violations of the State Administrative

Procedure Act.

     Presently before the Court is the State Defendants' motion to dismiss pursuant to

Fed. R. Civ. P. 12(c).

## II.      STANDARD OF REVIEW

     The standard pursuant to Fed. R. Civ. P. 12(c) is identical to that under Rule

12(b)(6).  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly,

127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99

(1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." Id. at 1964-65.  "Factual allegations must

be enough to raise a right to relief above the speculative level. . . on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.  "'[T]he

pleading must contain something more . . . than . . . a statement of facts that merely creates

a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."  Ashcroft, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations.  Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

With this standard in the mind, the Court will address the pending motion to dismiss.

**III.    DISCUSSION**[6]

Defendants move to dismiss on the grounds that the Amended Complaint violates Fed. R. Civ. P. 8, the claims for money damages are barred by the Eleventh Amendment, the Complaint fails to allege personal involvement of the individual State Defendants, the Complaint fails to state a claim, the claims are barred by laches, Plaintiff is estopped from alleging that his disability application was improperly granted, this action is untimely, and Defendants are entitled to qualified immunity.

---

[6] In reviewing the pending motion, the Court has accepted Plaintiff's Amended Memorandum of Law but, except as otherwise stated herein, has excluded all matters submitted outside the pleadings.

a. **Rule 8**

Defendants first move to dismiss the Complaint on the ground that it fails to comply with Fed. R. Civ. P. 8's "short and plain statement" requirement.  As the Second Circuit has explained:

> Rule 8 provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. . . . The statement should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."

Salahuddin v. Cuomo, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

> When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.  Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. . . . When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.

Id.  A Court has the "power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible. . . ." Id.

Plaintiff's Amended Complaint gives Defendants fair notice of the claims it asserts.  The problem is that the basis of Plaintiff's claims is buried in a sea of irrelevant allegations.  Upon reviewing the Amended Complaint, it is clear that Plaintiff is asserting violations of his rights as protected the Due Process and Equal Protection Clauses arising out of Defendants' failure to timely give him a hearing on the merits.  It is less clear whether he is asserting a

violation of the First Amendment, <u>see</u> Am. Compl. at ¶¶ 145, 148.  Much of Plaintiff's

Amended Complaint, however, goes to the quantum or sufficiency of the evidence used by

the Retirement System in determining Plaintiff's benefits, whether they relied on proper

medical evidence, and other matters that do not appear to be relevant to the Constitutional

claims raised herein.  <u>See</u> <u>e.g.</u> Am. Compl. at 5, 48-54, 56-70.  Moreover, despite prior

admonitions, the Amended Complaint continues to plead evidence, <u>see</u> <u>e.g.</u> Am. Compl. at

35,71, 72, 74, 95, 101, and argue the law, <u>see</u> <u>e.g.</u> <u>id.</u> at 68, 69, 98, 140.[7]  The prolixity of the

Complaint has put an unnecessary burden on Defendants and the Court.  That being said,

because Defendants have already gone through the trouble of answering the Amended

Complaint, the Court sees no practical reason to require further amendment, which would

only impose additional work on all parties.  Moreover, in light of the expressed reference for

the resolution of cases on the merits, the Court declines to dismiss the Complaint for failure

to comply with Rule 8.

> **b.  <u>Eleventh Amendment</u>**

Defendants move to dismiss any claims for money damages against the

Retirement System and the individual State Defendants in their official capacities as barred

by the Eleventh Amendment.  In response, Plaintiff contends that he does not assert any

claim for money damages against the Retirement System or the State Comptroller.

Accordingly, any such claims are dismissed.

---

[7] This is not intended to be a comprehensive listing of all paragraphs in the Amended Complaint that run afoul of the "short and plain" requirements of Rule 8(a)(2).

### c.   **Personal Involvement**

Defendants next move to dismiss the claims against Defendants Coughlin and Riell on the ground that there are insufficient plausible allegations of their personal involvement. The personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Personal involvement is found where the defendant at issue directly participates in the infraction.  Id.  For a defendants who holds a supervisory position, personal involvement also may be found if the defendant learns of a violation but fails to remedy it, creates a policy or custom causing unconstitutional practices, acts with gross negligence in managing subordinates who cause the unconstitutional practice, or acts with deliberate indifference to ongoing constitutional violations.  Id.

### 1.   Coughlin

Defendant Coughlin is a supervising attorney with the Retirement System.  He is mentioned at paragraphs 21, 49, 50, 71, 78, 127, 128, 130, and 146 of the Amended Complaint.  In these paragraphs, it is alleged that Coughlin:

> 1) informed Plaintiff's current attorney in sum and substance . . . that the security guards had been sent [while Plaintiff was reviewing his file at the Retirement System] because Plaintiff had threatened [the] former Retirement System attorney, see Am. Compl. at ¶ 49;
>
> 2) the security guards appeared as the result of collaboration between Robert Coughlin and Clarkstown Deputy Town Attorney Richard Glickel as an intimidation tactic, id. at 50;
>
> 3) falsely claimed that Plaintiff threatened the prior attorney, id;[8]

---

[8] There are no allegations that Plaintiff was denied the opportunity to review his file.  There similarly are no allegations plausibly suggesting that this incident was related to the failure to provide a

(continued...)

4) was copied on a letter, id. at 71,

5) replaced George King as counsel to the Retirement System, id. at 78,

6) [u]pon information and belief, . . . repeatedly engaged in ex parte communication with Clarkstown's Attorney . . . and . . . with those who were involved in making the Decisions and the initial determination granting the employer's application in this case, id at 127;

7) was . . . involved in denying the Plaintiff his constitutional rights and in preventing the Plaintiff from obtaining a fair hearing and repeatedly engaged in ex parte communication with Rickard A. Glickel, concerning Plaintiff, id, at 128;[9]

8) agreed to change the Retirement System's practice of denying the Employer's application for an employee's retirement if the member declined to sign an authorization for the release of his medical records. . . . and subpoenaed certain medical records, id at 130, and

9) acted under a belief that by reason of his power and authority in the Defendant Retirement System, he could satisfy any judgment which might be rendered against him by payment of public monies rather than resorting to his own personal assets. Id. at 146.

It is unclear how the allegations one, two, three, four, five and eight listed above have any relevance to Plaintiff's claim that his rights to due process of law were denied by virtue of the delay in providing a hearing. There are no allegations that Plaintiff was denied the opportunity to review his file. Further, these allegations do not plausibly suggest any relation to the failure to provide a timely hearing. The sixth allegation refers to conduct that occurred in 1999 and similarly does not implicate any subsequent efforts by Plaintiff to get a hearing. The seventh and ninth allegations are conclusory allegations that are insufficient to plausibly suggest Coughlin's personal involvement in any delay. Thus, none of these allegations, even

---

[8](...continued)
timely hearing.

[9] This allegation is largely conclusory. Richard Glickel was the attorney for the Town of Clarkstown. The Amended Complaint fails to plausibly allege how any *ex parte* communications between Coughlin and Glickel led to a delay in providing a hearing.

if true, plausibly implicate Plaintiff's failure to obtain a timely hearing.  Accordingly, the

Amended Complaint fails to allege sufficient personal involvement to sustain § 1983 claims

against Coughlin.

> 2. <u>Riell</u>

Defendant Riell also is an attorney with the Retirement System.  The Amended

Complaint alleges that he:

> 1) advised the hearing officer at the February 22, 2007 hearing that the matter was being adjourned at Plaintiff's request, when in fact adjournment was due to the failure of the Retirement System to answer Plaintiff's phone calls and letters, Am. Compl. at 81;
>
> 2) did not tell Plaintiff that a record would be made before the hearing officer on February 22, 2007, <u>Id</u>. at 82;
>
> 3) wrote a letter making the Determination that the Retirement System would not hold a hearing on the merits, <u>id</u>, at 89;[10]
>
> 4) took the position that Plaintiff was not allowed to raise any issues other then [sic] the two issues that were set forth in the 2000 interim determination, <u>id</u>. at 91;
>
> 5) adopted differing positions and tried to eliminate the issue concerning causal relationship [whether Plaintiff was permanently disabled as a result of injuries sustained in the performance of duties]; <u>id</u>, at 92;
>
> 6) advised Plaintiff that he would not get a hearing on the merits but whether the application should be dismissed for failure to prosecute, purportedly for Plaintiff's failure to respond to requests for information by the Retirement System; <u>id</u>, at 94;
>
> 7) as an advocate for the Retirement System, was wrongfully involved in making determinations, <u>id</u>, at 96-97; and
>
> 8) acted under a belief that by reason of his power and authority in the Defendant Retirement System, he could satisfy any judgment which might be rendered against

---

[10] This allegation is implausible and contradicted by the allegations of the Complaint itself.  It is clear that Riell took the position on behalf of the Retirement System that the hearing should be limited to certain issues.  The hearing officer made the ultimate determination whether to dismiss the request for a hearing for failure to prosecute and what other issues to consider.

> him in the instant anticipated Federal Civil Rights action by payment of public
> monies rather than resorting to his own personal assets.  Id. at 146

These allegations are insufficient to establish personal involvement in any delay in providing

Plaintiff with a hearing.  There are no actions attributable to Riell prior to 2007.  Plaintiff

concedes that, as of 2006, efforts were being made to schedule a hearing and that an initial

hearing was held in February 2007.  The first allegation listed above contends that Riell

appeared at the February 2007 hearing and "told the hearing officer that the hearing was

adjourned at the request of Plaintiff. . . when in fact the adjournment was due to the failure of

the Retirement System to answer Plaintiff's phone calls and letters so that a fair hearing of all

the evidence could take place." Am. Compl. at 81.  Regardless of who caused the

adjournment, the fact remains that efforts were being made to afford Plaintiff a hearing and

an adjournment was requested.

    The second allegation is unrelated to any delay in providing a hearing.  In the third

and seventh allegations, Plaintiff argues that Riell was impeding his right to a hearing and

making determinations on behalf of the Retirement System by attempting to limit the issues

to be addressed at any hearing.  Even assuming Riell wrote a letter purporting to limit the

issues to be addressed at the upcoming hearing, Plaintiff's conclusion is implausible and not

supported by the allegations of the Amended Complaint itself.  The hearing officer retained

the ultimate decision as to what issues to allow, and determined "that he would not dismiss

the request for a hearing. . . ." Am. Compl. at 105.  In any event, Riell was simply making

arguments on behalf of the Retirement System, which was his obligation.

    The fourth and sixth allegations are related to the third.  Relying on that portion of

King's letter stating that Plaintiff could raise whatever issues he wished at the hearing,

Plaintiff argues that Riell adopted a position contrary to that of King because Riell opposed Plaintiff's attempts to raise additional issues.  Plaintiff uses this argument in support of his contention that Riell interfered with his Due Process and Equal Protection rights.  This argument must be rejected for several reasons.  First and foremost, King stated in his letter that "[t]he Retirement System attorney may object to any [issues] that are felt to be improper and/or irrelevant. . . ."  Am. Compl. at ¶ 74.  That is precisely what Riell was doing and, thus, was not contrary to King's prior representations.  Second, any statements by King did not grant Plaintiff any liberty interests or rights.  Riell was free to make whatever arguments he deemed appropriate on behalf of the Retirement System.  Ultimately, it was up to the hearing officer to determine what issues to consider.  Riell did not have the power to define or limit the scope of the hearing.  Third, any positions Riell took are irrelevant to the question presented here - whether the delay in providing a hearing violated Plaintiff's rights as guaranteed by the Due Process and Equal Protection Clauses and the First Amendment.  While a hearing was set for November 2007 to address whether Plaintiff's claims should be dismissed for failure to prosecute, the hearing officer declined to dismiss the claim for failure to prosecute.  Am. Compl. at 105.  A full hearing was held in 2009.[11]  Accordingly, nothing Riell did interfered with Plaintiff's rights to a hearing.  The Court, therefore, finds that there are insufficient allegations of personal involvement by Riell.

---

[11] Although Plaintiff makes numerous claims concerning the legality of that proceeding, there are no plausible allegations that, other than advocating on behalf of his client (the Retirement System) Riell did anything to prevent that hearing or interfere with Plaintiff's right to a hearing.

**d.   Equal Protection**

Plaintiff claims that Defendants' conduct violated his rights as guaranteed by the Equal Protection Clause to the United States Constitution by intentionally and purposefully treating him differently than all others.  In his memorandum of law in opposition to the motion to dismiss, Plaintiff contends that "Defendants will presumably be unable to show any other case where a member had to wait 10 years for a hearing, and where the Retirement System claimed that the member had to prove that he was not disabled.  Furthermore, Plaintiff's [sic] believes that the evidence will show that the Defendants were motivated by Plaintiff's active involvement in pursuing the employment rights of the members of the PBA."

To succeed on a class-of-one claim, Plaintiff must establish that (i) no rational person could regard his circumstances to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.  Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010).  There are insufficient plausible allegations in the Amended Complaint from which it can reasonably be inferred that Plaintiff was treated differently from anyone else or to exclude the possibility that Defendants acted on the basis of a mistake.  The Amended Complaint make no reference to any similarly situated persons.  See id. at 143 (Plaintiff must prove "'intentional disparate treatment,' that is, demonstrate the decisionmakers were aware that there were other similarly-situated individuals who were treated differently."); Reed. v. Medford Fire Dept., Inc., — F. Supp.2d —, 2011 WL 3555821, at *11 (E.D.N.Y. 2011).

On the other hand, there are factual allegations in the Amended Complaint suggesting that any failure to timely provide a hearing could have been the result of mistake. In February 2001, after the dismissal of the Article 78 proceeding in 2000, Plaintiff applied for, and was granted, accidental disability retirement benefits.[12]  A person cannot simultaneously receive benefits under § 207-c and either § 363 or § 363-c.  Thus, Plaintiff's application could have reasonably caused Defendants to believe (even if mistakenly so) that Plaintiff was conceding that he could not work on account of his disability thereby justifying the application for disability benefits pursuant to N.Y. Retire. & Soc. Sec. Law § 363-c.  See Defs.' Ans. at Ex. E ("I believe your filing and acceptance of the Accidental Disability Retirement Benefit led the Retirement System to assume that you no longer wished to pursue this matter.").[13]  This is particularly so because the Retirement System specifically asked Plaintiff whether he wished to continue receiving the performance of duty benefit or receive the accidental disability benefit, and Plaintiff responded that he "elect[ed] to receive an Accidental Disability Retirement Allowance" without any reference to his request for a redetermination on the performance of duty benefits.  Def.'s Ans. at Ex. D.

To the extent Plaintiff contends that his failure to get a timely hearing was in retaliation for his participation in the efforts of the PBA, such a claim is properly redressed under the First Amendment; not the Equal Protection Clause.  Defendant does not move to

---

[12] In his application, Plaintiff claimed that the application was being filed "without prejudice to his pending request for a hearing and redetermination of the granting of the employer's acpplication for his performance of duty disability retirement. . . ."  Am. Compl. at ¶ 47.

[13] In connection with the instant motion pursuant to Fed. R. Civ. P. 12(c), the Court can consider the exhibits attached to Defendant's Answer. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'") (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)).

dismiss any First Amendment claim on substantive grounds.  Accordingly, the Equal Protection claim is dismissed.

###### e.    Due Process

Defendants move to dismiss the due process claims on the ground that "Plaintiff may not bring Section 1983 claims alleging constitutional deficiencies in an administrative proceeding when he did not challenge that proceeding pursuant to Article 78 of the CPLR." Defendants continue to note that a final determination was issued in this matter on February 8, 2010, the determination was mailed to Plaintiff's attorney on February 23, 2010, and Plaintiff did not file an Article 78 proceeding.  Plaintiff responds that the significant delay of providing a hearing constitutes a due process violation, see Am. Compl. at ¶¶ 176-181; Pl.'s Mem. of Law at 19-20 ('[t]he prolonged ten year delay alone in affording him a hearing deprived him of his constitutional right to due process), and he was not required to file an Article 78 proceeding because, due to violations of the state Administrative Procedure Act, no final determination was properly issued.

Although not entirely clear, Plaintiff appears to be claiming that he was entitled to an opportunity to be heard before his § 207-c benefits were terminated and he was, instead, given benefits pursuant to N.Y. Retirement and Soc. Sec. Law § 363-c.  See Pl.'s Mem. of Law at 20 ("Plaintiff [was] denied his right to a pre-hearing notice and an opportunity to respond at a meaningful time. . . .").  As a general rule, it has been held that § 207-c benefits are a protected property interest and that a recipient is entitled to notice and an opportunity to be heard prior to the termination of those benefits.  See Mullen v. City of Syracuse, 2011 WL 111872, at *2-4 (N.D.N.Y. 2011); Matter of Park v. Kapica, 8 N.Y.3d 302, 310, 832 N.Y.S.2d 885, 864 N.E.2d 1284 (2007).  The Amended Complaint alleges that § 207-c

benefits were discontinued as of February 1999.  The failure to provide a pre-deprivation

opportunity to be heard could constitute a deprivation of Plaintiff's right to due process of law.

Mullen, 2011 WL 111872, at *3-4.  However, Plaintiff previously raised this very issue in

Grosso v. Regan, No. 1997-92 (Sup. Ct. Albany County 1994).  In Grosso, the court held that

the procedures afforded Plaintiff passed constitutional muster and provided sufficient pre-

termination notice and opportunity to be heard.  Specifically, it was noted that:

> The affected member is afforded every opportunity to participate in the process. . .
> The absence of a formal "hearing" does not render the present process
> constitutionally defective.  What is required is that petitioners be given some
> pretermination opportunity to be heard and an opportunity to present their side of
> the story.  The fact that petitioners are notified of the application through a request
> for medical authorizations and an opportunity to participate in the process by
> submitting to an examination before an independent physician satisfied the
> constitutional mandates for due process.

Grosso, (internal quotation, citation and alteration omitted).

Accordingly, to the extent Plaintiff is asserting such a claim, it is barred by *res judicata*.

Plaintiff also challenges the delay in providing a hearing.  While Plaintiff correctly

notes that unreasonable delay may give rise to a constitutional violation in some

circumstances, Spinelli v. City of New York, 579 F.3d 160, 173-74 (2d Cir. 2009), the Second

Circuit stated in New York State Nat. Org. for Women v. Pataki, 261 F.3d 156, 167-69 (2d

Cir. 2001), that:

> In an Article 78 proceeding, New York state courts are empowered to issue
> "common law writs of certiorari to review, mandamus, and prohibition."  Hellenic
> Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir.
> 1996). . . . Once the delay in the processing of any claim of the [plaintiffs] . . .
> became unreasonable, [they] . . . could have brought an Article 78 proceeding to
> mandamus [state] officials to proceed expeditiously to resolve the . . . claim. . . . By
> doing so, the [plaintiffs] . . . could have substantially reduced, if not eliminated, the
> risk of prejudice to their claims from further delay. . . .

> Given the availability of Article 78 procedures, which can be invoked before actual prejudice arises (unlike a § 1983 damage claim, which presumably would arise only after actual prejudice had occurred), we find that the second <u>Mathews</u> factor weighs dispositively in favor of the government.  Thus, we hold that New York has afforded the members of subclasses A and B all of the process they are due under the Fourteenth Amendment of the Federal Constitution.

<u>New York State Nat. Org. for Women v. Pataki</u>, 261 F.3d 156, 168 (2d Cir. 2001);[14] <u>see</u> <u>also</u> <u>Brown v. Tomcat Electrical Security, Inc.</u>, 2007 WL 2461823, at *5 (E.D.N.Y. 2007) (delay in administrative proceedings not actionable because the plaintiffs "have the right . . . to challenge unreasonable delay through an Article 78 proceeding. . . .").  Applying these principles here, once the delay in receiving a hearing became unreasonable, Plaintiff could have availed himself of an Article 78 mandamus proceeding to compel the Retirement System to hold a hearing.

As of 2000, when the initial Article 78 proceeding was dismissed for the failure to exhaust administrative remedies based on Defendants' representation that further proceedings would be held, Plaintiff knew he was entitled to additional proceedings.  Despite the passage of significant time, Plaintiff did not seek to compel his right to a hearing.[15]  In August 2002, Defendants sent Plaintiff a letter asking him if he wished to pursue a hearing on the performance of disability benefits.  Plaintiff did not respond.  In October 2002, Defendants notified Plaintiff that, because he did not respond to the August 2002 letter, they

---

[14] The Second Circuit was referring to the factors set forth in <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976): (1) the private interest to be affected by the official action; (2) the risk of an erroneous deprivation through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest.

[15] Although Plaintiff contends that he was not represented by counsel during much of this period of time, that is irrelevant to the analysis.

considered the matter closed.[16]  Plaintiff did not file an Article 78 proceeding to challenge the

closing of the matter or to otherwise compel a hearing.  Thus, to the extent Plaintiff argues

that the delay in providing a hearing constituted a violation of his right to due process of law,

the availability of a remedy under Article 78 afforded him an adequate pre-deprivation

remedy.  "'Under the jurisprudence, a procedural due process violation cannot have occurred

when the governmental actor provides apparently adequate procedural remedies and the

plaintiff has not availed himself of those remedies.'" Id. (quoting Alvin v. Suzuki, 227 F.3d

107, 116 (3d Cir. 2000)).  Having failed to take advantage of an Article 78 proceeding,

Plaintiff cannot challenge the delay through a § 1983 claim in this court.  New York State Nat.

Org. for Women, 261 F.3d at 169.

Plaintiff did ultimately receive a hearing in 2009, which, he contends, was fraught

with various problems (e.g. the burden of proof was improperly placed on him, the hearing

officer should have recused himself, etc.).  To the extent Plaintiff challenges the process he

received during the course of the hearing, those claims are precluded by the availability of an

Article 78 proceeding.  See Chase Group Alliance LLC v. City of New York Dept. of Finance,

620 F.3d 146, 153 (2d Cir. 2010) ("The fact that a state proceeding is required by due

process does not mean that Section 1983 provides a remedy for every error committed in the

state proceeding.  So long as state appellate remedies are available, a Section 1983 action

is not an available vehicle for relief.").  As the Second Circuit has explained:

> An Article 78 proceeding permits a petitioner to submit affidavits and other written
> evidence, and where a material issue of fact is raised, have a trial of the disputed
> issue, including constitutional claims. . . . Petitioners proceeding under Article 78

---

[16] Because these letters were attached to Defendants' Amended Answer, the Court may
consider them in connection with the pending Rule 12(c) motion. See n.13 supra.

> may raise claims that the agency adjudicator was biased and prejudged the outcome, . . . that the determination was slanted by the adjudicator's refusal to recuse herself, . . . or that ex parte communications with other officials may have infected the adjudicator's ruling. . . . An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes. . . . Moreover, [there is] . . . no persuasive authority that states an administrative hearing with a neutral adjudicator rather than judicial review under Article 78 is needed to satisfy due process.  No reason exists to depart from the general presumption that a judicial trial represents the epitome of full process.

Locurto v. Safir, 264 F.3d 154, 174-75 (2d Cir. 2001).  Because Plaintiff had full judicial review available to him, he was afforded all the process that was due.

The Court rejects Plaintiff's claims that an Article 78 proceeding was unnecessary. Plaintiff first contends that his due process rights were denied because the hearing officer switched the burden of proof to Plaintiff.  Assuming this implicates any constitutional concerns, as discussed, Plaintiff could have challenged this in an Article 78 proceeding. Plaintiff next argues that he did not have any remedies in an Article 78 proceeding because the hearing officer failed to consider the constitutional or procedural issues that are the subject of this lawsuit and, therefore, there would have been an inadequate record to review. The Comptroller's determination expressly refutes any contention that the constitutional claims were not addressed.[17]  In any event, a state court was fully capable of addressing such issues in an Article 78 proceeding.  Third, Plaintiff's argument that the hearing officer violated § 303 of the State Administrative Procedure Act by failing to rule on the motion to

---

[17] The Court may consider the Comptroller's decision, which was submitted by Defendants, because it is expressly referenced in the Amended Complaint, see Am. Compl. at ¶ 170, 175, and forms a substantial portion of Plaintiff's claims.  Moreover, the decision is a document in Plaintiff's possession, or of which he had knowledge, that he relied on in drafting his Amended Complaint. See Halebian v. Berv, 644 F.3d 122, 131 n.7 (2d Cir. 2011).  Further, while, as a general rule, the Court must assume the allegations in the Amended Complaint to be true, it need not do so where it is contradicted by more specific allegations or documentary evidence.  See L-7 Designs, Inc., 647 F.3d at 422.

disqualify is contradicted by the hearing officer's decision expressly rejecting the motion to disqualify.  Again, review of the motion to disqualify the hearing officer was available through an Article 78 proceeding.  Having had a hearing and an opportunity to challenge the results of the hearing and the Comptroller's determination through an Article 78 proceeding, those issues cannot be litigated in this forum.  Fourth, there is no basis for Plaintiff's claim that the determination was not final for purposes of instituting an Article 78 proceeding.  The letter accompanying the hearing officer's determination clearly advised Plaintiff that if he was "dissatisfied with the result in this matter, [he had] . . . the right to judicial review in a proceeding pursuant to Article 78 of the Civil Practice Law and Rules (CPLR)."  The letter continued to note that "[t]he Agency has no further jurisdiction in this matter. . . . Since there is a very short statute of limitations involved, you may wish to consult an attorney for advice on seeking judicial review."

### f.   Statute of Limitations

Defendants also move to dismiss various of Plaintiff's claims as time barred. Having dismissed the Equal Protection and Due Process claims, the Court need not address whether those claims would be time-barred.  That leaves the issue of whether Plaintiff's claims under § 207-c are time-barred.  Although the basis for the § 207-c claims is not entirely clear, Plaintiff alleges that Defendants' "conduct and/or retaliatory conduct violated Plaintiff's rights pursuant to General Municipal Law Section 207-c of the Laws of the State of New York."  Am. Compl. at ¶ 185.

As mentioned, § 207-c provides benefits for police officers injured in the performance of his or her duties.  The statute specifically provides that § 207-c payments "shall be discontinued . . . if such policeman is granted an accidental disability retirement

allowance pursuant to section three hundred sixty-three of the retirement and social security law, a retirement for disability incurred in the performance of duty allowance pursuant to section three hundred sixty-three-c of the retirement and social security law or similar accidental disability pensions. . . ."  Here, Plaintiff's § 207-c benefits were terminated in February 1999 when the Comptroller approved the application for § 363-c benefits.  As the Court previously held in connection with the Town Defendants' motion to dismiss:

> To the extent Plaintiff asserts a claim under Municipal Law § 207-c, his benefits under that section were terminated in 1999 as a result of the Retirement System's decision to grant § 363-c benefits and his [subsequent] application for . . . benefits in 2001.  Thus, Plaintiff was aware of the termination of his § 207-c benefits by 2001 at the latest.  That occurred long before the filing of the instant Complaint and beyond any applicable statute of limitations.  See N.Y.C.P.L.R. §§ 217 (four month statute of limitations for Article 78 proceedings); Heaton v. Monroe County, 78 A.D.3d 1501, 910 N.Y.S.2d 611 (4th Dep't 2010) (applying four month statute of limitations to action challenging denial of benefits under § 207-c); Raymond v. Walsh, 63 A.D.3d 1715, 880 N.Y.S.2d 597 (4th Dep't 2009); DeGiacomo v. Kissinger, 62 A.D.2d 1048, 404 N.Y.S.2d 298 (2d Dep't 1978) (applying the three year statute of limitations in C.P.L.R. § 214(2) to an action for declaratory relief under Gen. Mun. Law § 207-c).

Clark v. DiNapoli, 2011 WL 13752, at *3 (N.D.N.Y. 2011).  This conclusion equally applies to the State Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as follows:

a.    the Amended Complaint is DISMISSED as to Defendants Coughlin and Riellin;

b.    the Equal Protection claims are DISMISSED;

c.    the Due Process claims are DISMISSED; and

d.    the claims pursuant to § 207-c are DISMISSED.

To the extent Plaintiff is asserting a First Amendment claim, Defendants did not move to dismiss that claim and it, therefore, survives the instant motion.[18]

IT IS SO ORDERED.

Dated: October 13, 2011


Thomas J. McAvoy
Senior, U.S. District Judge

---

[18] Due to Eleventh Amendment immunity, Plaintiff cannot recover monetary damages for any First Amendment violation.